IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 13, 2013

## BRUCE RELIFORD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**Nos. 9306433, 9306434, 9306437, 9306438     J. Robert Carter, Jr., Judge**

_____

**No. W2012-02339-CCA-R3-PC  - Filed November 27, 2013**

_____


After his previous guilty-pleaded convictions were vacated, petitioner, Bruce Reliford, pleaded guilty to aggravated robbery charges and was found guilty by a jury of felony murder. Following an unsuccessful direct appeal and denial of discretionary review by our supreme court, he filed the instant petition for post-conviction relief. The post-conviction court denied relief, and this appeal follows, in which petitioner alleges the following: (1) ineffective assistance of counsel by failing to properly communicate with him; (2) ineffective assistance of counsel by advising him to plead guilty to the aggravated robbery charges; and (3) the post-conviction court's error in denying his motion to recuse. Following our thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Michael R. Working, Memphis, Tennessee, for the appellant, Bruce Reliford.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy Weirich, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

-1-

**OPINION**

I.  Facts

A.  Procedural History Following the 1995 Guilty Plea Submission/Petitioner's
Motion for Correction of Sentence

As set forth more fully below, in 1995, petitioner entered guilty pleas to one count of first degree felony murder, two counts of aggravated robbery, and one count of aggravated assault.  Four years later, he filed a "Motion for Correction/ Reduction of Sentence." Obtaining no relief in the trial court, petitioner successfully appealed.  His convictions were vacated, and the case was remanded to the trial court.  This court summarized the procedural history of petitioner's case as follows:

> This direct appeal follows dismissal of the appellant's motion at the trial level for a "Correction/Reduction" of his sentences. The appellant is currently serving an effective sentence of life without parole after pleading guilty in 1995 to the offenses of first degree murder, two counts of aggravated robbery and one count of aggravated assault. He argues that his sentences are illegal and are subject to correction because (1) his life sentence is in direct contravention of statutory authority and (2) his negotiated plea agreement with the State is incapable of specific performance. The indictment alleges that these offenses occurred on December 24, 1992. On this date, life without the possibility of parole was not an available sentencing option for first degree murder. Although we find that appellate review of a "Motion for Correction or Reduction" of a sentence is not available, as of right, under Tenn. R. App. P. 3(b), nonetheless, we hold that review is available under the common law writ of certiorari . . . .

> On February 6, 1995, the appellant, Bruce C. Reliford, entered, pursuant to a negotiated plea agreement, guilty pleas to two counts of aggravated robbery, one count of aggravated assault, and one count of first degree murder. The indictment recites that these offenses occurred on December 24, 1992. The negotiated plea agreement provided that the appellant would receive concurrent sentences of twelve years for each count of aggravated robbery, six years for aggravated assault, and a sentence of life without the possibility of parole for first degree murder. The agreement further provided that the appellant's state sentences would be served concurrently with a federal sentence in case CR93-20107M, USDC, W.D.TN. The trial court accepted the plea agreement and imposed the bargained for sentences.

On July 23, 1999, the appellant filed a "Motion for Correction/ Reduction of Sentence," alleging that the Shelby County Criminal Court imposed illegal sentences.

. . . .

Finding that the trial court was without statutory authority to impose the bargained for sentence of life without the possibility of parole for the appellant's conviction of first degree murder, we vacate the conviction and sentence for first degree murder. Moreover, since the appellant's plea bargain agreement encompassed not only the charge of first degree murder but also the charges for aggravated robbery and aggravated assault, we are unable to separate the individual convictions/sentences imposed under the plea agreement in fashioning appropriate relief. Accordingly, we must vacate all convictions and remand to the trial court. On remand, the trial court may impose a sentence that is mutually agreeable to the State and the appellant, so long as the sentence is available under the applicable law. If an agreement is not reached, the appellant may withdraw his guilty pleas and proceed to trial on the original charges.

*State v. Bruce C. Reliford*, No. W1999-00826-CCA-R3-CD, 2000 WL 1473846, at *1-3 (Tenn. Crim. App. Oct. 2, 2000) (internal citation omitted).

### B. Facts from Trial

Following the aforementioned remand to the trial court, petitioner entered guilty pleas to two counts of aggravated robbery and proceeded to trial on the charge of felony murder. The facts from the trial were summarized by this court on direct appeal as follows:

The defendant, Bruce C. Reliford, entered guilty pleas to aggravated robbery charges, following a remand, and was convicted by a jury of felony murder. The trial court imposed a life sentence for the felony murder conviction and twelve years for each aggravated robbery conviction, to be served concurrently. On appeal, the defendant contends that: the trial court improperly allowed evidence to be introduced at trial; his statement to police was not given voluntarily; and the trial court erred in accepting his guilty pleas and in setting his sentence. After careful review, we affirm the judgments from the trial court.

On December 24, 1992, the defendant robbed two employees at a Memphis gas station. He also shot and killed Shannon Wilson and stole

Wilson's car in the process of fleeing the scene. Initially, the defendant entered the gas station and grabbed Cynthia Coleman. He ordered two other women to go into the women's restroom and demanded that Ms. Coleman open the safe. The defendant was armed with a gun and threatened to kill Ms. Coleman if she did not open the safe and give him the money. He told Ms. Coleman not to touch the phone and that if a police car came onto the lot, he would go to jail for murder because he would blow her brains out. She estimated that she gave the defendant approximately $6000 and put it in a brown paper bag. Ms. Coleman then went into the men's restroom and locked the door.

After he got the money from the safe, the defendant knocked on the women's restroom door and demanded Karen Yarber's car keys. She complied with his demand after the defendant pointed the gun at her and told her to give him the keys. The women emerged from the restrooms after the defendant left, and Ms. Yarber observed that the defendant had not taken her car. Ms. Coleman called 911 to report the robbery when she was sure the defendant was gone.

The women in the gas station observed a lot of "commotion" at the Toddle House across the street. The police later returned with the bag of money, Ms. Yarber's keys, and the jacket the defendant had been wearing when he robbed the store.

Vincent Price testified that he was eating breakfast at the Toddle House when he heard a loud crash outside. He went outside to see what happened and heard someone yell, "[H]e shot me." He saw the defendant standing over Shannon Wilson, who was lying on the ground near a car. Mr. Price testified that he observed the defendant step over Wilson's body, get in the car, and drive away. He told police that the car was a dark blue Toyota. Mr. Price applied pressure to a gunshot wound in the victim's chest until the ambulance arrived.

Shannon Wilson's father testified that his son purchased a new dark blue Toyota about a month before he was killed.

On the day following the robbery and shooting, the witnesses, Ms. Chapman, Ms. Yarber, and Mr. Price, were called to the police station to view a lineup. Each witness identified the defendant as the man responsible for the robbery.

-4-

Sergeant Alan Pinnow testified that he interviewed the defendant two days after the crimes. He said that the defendant executed a waiver of his right to remain silent and his right to counsel and agreed to answer the sergeant's questions. The defendant confessed to robbing the gas station and identified the gun that he used to commit the crimes. The defendant also acknowledged that he took Ms. Yarber's car keys so he could escape in her car but, when he was unable to open her car, he ran across the street to the restaurant where he found Wilson sitting in his car. The defendant told the police that Wilson grabbed the gun from him, and it went off. The defendant said that he then got in the car and fled the scene. The defendant's interview was transcribed in the robbery bureau. When the statement was presented to the defendant, he refused to sign it because there was an error in the transcript.

. . . .

The defendant presented two witnesses who testified that someone at the lineup said, "That's him, that's him[,]" during the identification process.

Linda Sue Ridgell testified that she was standing at the cash register at the Toddle House restaurant when she saw someone shoot a man in the parking lot. She said that she did not get a good look at him but thought he was "five six to five seven" in height. The defendant demonstrated that he was six feet tall. She testified that the outburst from the person in the lineup room had no impact on her identification.

*State v. Bruce C. Reliford*, No. W2007-02899-CCA-R3-CD, 2010 WL 1610517, at *1-2 (Tenn. Crim. App. Apr. 19, 2010), *perm. app. denied* (Tenn. Sept. 23, 2010).

C.  Facts from Post-Conviction Proceedings[1]

1.  *Hearing on Petitioner's Motion for Recusal*

Prior to the evidentiary hearing, petitioner, without benefit of counsel, filed a motion for the post-conviction judge to recuse himself; however, post-conviction counsel argued the motion on behalf of petitioner.  As grounds, counsel presented an order for recusal filed by

---

[1] Petitioner raised several issues in the post-conviction court.  However, he pursues only three issues in this appeal.  Thus, our recitation of the facts will be limited to those that are pertinent to determination of the issues raised herein.

the judge in Division VIII[2] of the Shelby County Criminal Court wherein the court noted "several other divisions that should probably recuse themselves and cited [Division III]" in the list.[3] The post-conviction judge stated that when petitioner's post-conviction case was first assigned to him in Division III, his "first question was [whether] he [had] any contact, supervisory authority, participation even on a tangential matter[,] [or] handle[d] any part of it[,] and the answer is[,] ["]No.["] The court further stated that he was never a prosecutor in any of petitioner's cases and never supervised any unit of the prosecutor's office that handled any of petitioner's matters. The court ruled that simply being employed by the district attorney's office at the same time that petitioner had a case pending did not disqualify the court from handling the instant matter.

In a written order, the post-conviction court held:

> Petitioner, through counsel, has filed a Motion for Recusal of this Court. As grounds, he alleges that "it is possible" that Petitioner's case was handled in the same Division of Criminal Court where this Court once was assigned as an Assistant District Attorney General.

> Counsel, at the hearing, states that his client's original case was a special prosecution case, handled "vertically"[4] by a single prosecutor. The Court was not that prosecutor. Counsel further agrees that a review of the State's file and the record of the Criminal Court clerk show[s] no sign that this Court ever participated, even slightly, in the handling of Petitioner's case.

> The Petitioner's case was apparently tried in Division I of Criminal Court in the early 1990's. This Court has never participated in the prosecution

---

[2] It appears from the record that the post-conviction judge was employed as an assistant district attorney general and assigned to Division VIII of the Shelby County Criminal Court at some point during the pendency of petitioner's case at the trial level.

[3] Although petitioner characterizes the order in question as having recommended that other judges recuse themselves from this case, it appears that said order was not introduced as an exhibit at the hearing on the motion to recuse, nor was it appended as an exhibit to petitioner's motion. Our review of the technical record reveals signed orders of recusal from the judges of Divisions IV and V but not VIII. Thus, we may not consider this order on appeal.

[4] A "vertical prosecution" model has been described by our supreme court as one in "which one prosecutor is designated to remain with the case through final disposition[,] [r]ather than dividing the management and responsibility for a case among numerous prosecutors as it moves through pre-trial and trial[.]" *State v. Thomas*, 158 S.W.3d 361, 408 (Tenn. 2005).

of[] or had any knowledge of the facts or circumstances surrounding Petitioner's case.

The mere fact that the Court was employed by the . . . District Attorney General's Office at the same time that Petitioner was prosecuted does not create a conflict or the appearance of a conflict. There was no connection between the Court[] as a prosecutor[] and the Petitioner's case.

Following denial of petitioner's motion for recusal, the post-conviction court held an evidentiary hearing that spanned four different dates in August 2012.

## 2. *Evidentiary Hearing*

Petitioner testified that trial counsel (collectively) were appointed to represent him at trial after his retained counsel sought leave to withdraw from his case.[5] He stated that he met with Trial Counsel A and Trial Counsel B one time each in the three-year period that he was incarcerated at the county jail awaiting trial. Post-conviction counsel asked petitioner about his jail visitation records, which reflected that Trial Counsel B visited him one time approximately three weeks prior to trial and three or four times during the week preceding trial. Petitioner maintained that Trial Counsel B may have visited with another prisoner during that week but that he did not meet with petitioner. Petitioner noted that although his case was a capital murder case for many years, he received "maybe three" visits from his attorneys. He also claimed that he never received written correspondence from them.

Petitioner claimed that trial counsel "encouraged" him to plead guilty to the robbery counts. He asserted that Trial Counsel B entered the holding cell outside of the courtroom and "pointed his finger in [petitioner's] face and told [him] [he] was going to cop out to the robbery[,] and [he'd] better not take the stand in trial . . . ." He claimed that this incident was witnessed by a private investigator who was present. Post-conviction counsel noted that petitioner had never disclosed that the incident was witnessed until his testimony at the evidentiary hearing.

Petitioner believed that he was prejudiced by his pleading guilty because the jury would have assumed his involvement in the murder once it was informed that he had admitted his participation in the robberies. Although trial counsel argued that the guilty pleas

---

[5] The State filed a notice of intent to seek the death penalty in petitioner's case. Accordingly, the trial court appointed two attorneys to represent him. Trial Counsel A was listed as lead counsel, and Trial Counsel B was "second chair." However, when the State withdrew its notice, Trial Counsel A was officially discharged, although he continued to be involved with the case, leaving Trial Counsel B as primary counsel.

were inadmissible, the trial court allowed the jury to hear the evidence because it established that petitioner was in the vicinity of the murder at the time it was committed. Petitioner stated that he had not had any prior discussions with trial counsel about trial tactics or strategy. He had also not discussed the possibility of pleading guilty to the robbery charges prior to the day he entered the pleas. Before he entered the pleas, he had expected to testify at his murder trial, but after he pleaded guilty, trial counsel advised against petitioner's testifying at trial.

Trial Counsel B testified that he was licensed to practice law in 1992 and that eighty-five to ninety percent of his practice involved criminal cases. With regard to petitioner's pleading guilty to the robbery charges, Trial Counsel B stated that he and Trial Counsel A "certainly advised him to do so under the circumstances." He elaborated that trial counsel wanted to keep the video footage from the robbery out of evidence and that as a matter of trial strategy, they thought they would be successful if they reduced the "probative" nature of the video by having petitioner plead guilty to the crimes that were captured on tape. Trial Counsel B acknowledged that they were aware of what strategies had *not* worked in petitioner's case because he had already been convicted in federal court. Trial Counsel B further testified that he did not recall how many times he visited petitioner in jail but said that Trial Counsel A would have also met with petitioner.

Based upon the testimony and exhibits introduced at the evidentiary hearing, the post-conviction court denied relief by written order.

## II. Analysis

Although petitioner addressed several claims in his petition for post-conviction relief and subsequent amendments thereto, in this appeal, he pursues only three issues: (1) ineffective assistance of trial counsel for failure to adequately communicate with him; (2) ineffective assistance of trial counsel for advising him to plead guilty to the robbery charges; and (3) the post-conviction court's improperly denying his motion to recuse. Accordingly, the remaining issues have not been addressed in this appeal. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal.").

## A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her

factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

## B. Issues

### 1. *Alleged Failure to Properly Communicate with Petitioner*

Petitioner argues that until the week prior to trial, he received only one visit from Trial Counsel B and that such level of communication fell below the standard of performance, especially in a capital murder case. The State counters that the record contradicts petitioner's testimony and that he cannot demonstrate prejudice. We agree with the State.

In denying relief on this claim of error, the post-conviction court made the following findings of fact:

> Petitioner first contends that he only saw trial counsel [B] "twice in three years." The jail visitation records (Exhibit 1 to this hearing) would appear to contradict that statement, but Petitioner maintains that if trial counsel came to the jail[,] it was not to see him.

> It is clear that trial counsel was familiar with the facts of the case. Indeed, the transcript of the federal trial provided a blueprint for the case that the State would present.

> Petitioner does not allege anything that he was unable to communicate to his attorney. The record further indicates that trial counsel had ample opportunity to meet with Petitioner on the many court dates, as well as in the jail.

The evidence does not preponderate against these findings; thus, they are deemed conclusive in this appeal.

> The post-conviction court held:
>
> The record is clear that the long history and the federal prosecution in these matters gave trial counsel an opportunity to be totally familiar with the facts of the case. There were many chances for Petitioner to communicate with the lawyers and investigator. There was no proof of any information that trial counsel did not already have.

We agree with the post-conviction court. The jail visitation log, which was specific to petitioner's visitors only, indicated multiple visits from both of his trial attorneys. Even if they had visited more often, "[b]ecause . . . petitioner has failed to satisfactorily prove how this lack of communication might have affected the results of the trial, no relief can be granted on this basis." *Brimmer v. State*, 29 S.W.3d 497, 511 (Tenn. Crim. App. 1998). Petitioner is not entitled to relief on this claim of error.

Petitioner also makes an allusory statement that he could not have made "an informed decision to forfeit his right to testify if he did so without the opportunity to speak with his lawyer." The post-conviction court noted:

> Petitioner also complains of his decision not to testify in the trial. He blames his trial attorney for this decision. The decision in this case was memorialized in a *Momon* hearing conducted by the trial court . . . . It clearly outlines the fact that Petitioner, his two attorneys[,] and even his mother all discussed the matter prior to Petitioner declaring that it was his decision not to testify.

We agree with the post-conviction court. As fully set forth above, we again conclude that "petitioner has failed to satisfactorily prove how this lack of communication might have affected the results of the trial . . . ." *Brimmer*, 29 S.W.3d at 511. Petitioner is not entitled to relief on this issue.

2. *Failure to Properly Advise Petitioner with Regard to Entering Guilty Pleas*

Petitioner asserts that trial counsel were ineffective in advising him to plead guilty to the aggravated robbery charges. He acknowledges that the voluntariness of his guilty pleas has already been challenged and affirmed by this court on direct appeal; thus, he now challenges trial counsel's actions in advising him to enter the pleas. The State responds that

trial counsel employed a reasonable trial strategy "designed to reduce the probative value of evidence of the robbery." We agree with the State.

In denying relief, the post-conviction court made the following findings of fact:

As part of the trial of the case[,] [m]otions were heard concerning the admissibility of the evidence of the aggravated robberies in the trial of the murder indictment. In an effort to bolster their argument to preclude such testimony[,] a decision was made by Petitioner to plead guilty to the robberies. This was done in the hope of strengthening the argument that the two events were "separate and distinct" [and] had no relevance to one another.

Petitioner stated that he went along with it only at the direction of his attorney. In the [evidentiary] hearing, Petitioner complained about the voluntariness of the plea and his lack of understanding of the consequences. These issues were raised in his Motion for New Trial and covered in his appeal.

He now complains about the trial attorney's decisions around this tactic. Trial counsel testified that this course of action was pursued to give them a better argument when attempting to keep the evidence of the robberies out of the murder trial.

It appears that Petitioner now is second[-]guessing the strategy out of unhappiness with the result.

We accredit these findings as being conclusive on appeal because the evidence does not preponderate against them.

Although the post-conviction court did not specifically address this allegation in its conclusions of law, it held that "Petitioner maintains that his attorneys were deficient in a variety of ways. He concludes that they mishandled his pre-trial motions, the trial itself[,] and later the appeal as of right. He simply offers no proof of these assertions."

We also conclude that petitioner has failed to meet his burden of proof with regard to this issue. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 690-91). In this case, trial counsel had the unique benefit of hindsight; the case had already been tried in federal court, and they knew

which strategies were unsuccessful. Trial counsel also demonstrated an understanding of the rules of evidence in that they attempted to reduce the probative value of the video footage by advising petitioner to plead guilty. They hoped that the guilty plea would result in a ruling by the trial court that the probative value of the video was substantially outweighed by unfair prejudice. *See* Tenn. R. Evid. 403. The trial court nonetheless found that the video was probative because it established petitioner's whereabouts at the time of the crimes. "The fact that a particular strategy or tactical decision failed does not by itself establish deficiency. *Id.* (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn.1996)). Petitioner is not entitled to relief on this claim.

### 3. *Post-Conviction Court's Denial of Petitioner's Motion to Recuse*

Petitioner contends that because the post-conviction judge once worked as an assistant district attorney general and was assigned to Division VIII, the division in which petitioner's case was first docketed, the post-conviction court should have recused itself. In furtherance of this position, petitioner argues that "the propriety of recusal is so obvious[] that nearly all of [Divisions V, VI, VII, VIII, IX, and X] disqualified themselves without any request from [petitioner]" and that the post-conviction court should have recused itself as well. The State responds that petitioner's argument is meritless because the post-conviction judge had no contact with petitioner's case. Again, we agree with the State.

The decision of whether to "grant a motion for recusal is within the discretion of the trial judge." *Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009) (citing *Bd. of Prof'l Responsibility v. Slavin*, 145 S.W.3d 538, 548 (Tenn. 2004)). The court should grant a motion to recuse "'when the judge has any doubt as to his or her ability to preside impartially in the case or when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (quoting *Bean*, 280 S.W.3d at 805). Furthermore, "[r]ecusal is required when a judge has previously served as prosecutor of a defendant in the same case." *Smith*, 357 S.W.3d at 340. *But see Owens v. State*, 13 S.W.3d 742, 757 (Tenn. Crim. App. 1999) (holding that when "[t]he proof established that the [post-conviction] judge was *one of nearly seventy attorneys* employed by the District Attorney's Office[,] . . . was never assigned to prosecute or assist in the prosecution of [the] case[,] [and] related that he knew nothing about the facts of this case," recusal was not required) (emphasis in original).

In this case, the post-conviction court summarized its reasons for denying petitioner's motion to recuse. Among the reasons it cited were: (1) petitioner's case involved a "vertical" prosecution in which one assistant district attorney general handled all of the proceedings, and he was not that prosecutor; (2) although petitioner's case was originally docketed in Division VIII, it was tried in Division I, and the court had no involvement with the case while

it was in Division VIII; and (3) the judge had no involvement with petitioner's case, did not have supervisory responsibilities over any prosecutor involved with petitioner's case, and had not participated in even the most "tangential" aspect of the prosecution of petitioner. We agree that the post-conviction court's employment in the Office of the District Attorney General during the pendency of petitioner's case did not, in and of itself, require the court to recuse itself twenty years later.

Petitioner also maintains that he was prejudiced by the post-conviction court's failure to recuse because an issue involving "the notorious Memphis forty-eight[-]hour hold" developed during the evidentiary hearing. He states that he was prejudiced by the court's holding that any such claim regarding the constitutionality of the forty-eight-hour hold was waived, a ruling that stemmed from the court's failure to recuse. He asserts that "'[a]n objective person of ordinary prudence' would likely question the post-conviction court's impartiality on the question of forty-eight[-]hour holds based on years of work as a cog in that corrupt wheel." The State counters that petitioner's argument is based on a "flawed premise."

Petitioner bases his argument on *State v. Courtney Bishop*, No. W2010-01207-CCA-R3-CD, 2012 WL 938969, at *7-14 (Tenn. Crim. App. Mar. 14, 2012), *perm. app. granted* (Tenn. Aug. 15, 2012). He interprets *Courtney Bishop* as this court's having struck down the practice of the forty-eight-hour hold as unconstitutional. He suggests that as a natural consequence, the post-conviction court demonstrated bias by denying petitioner the right to address claims with regard to the hold because of the judge's involvement with the practice as an assistant district attorney general. The State's position is that the current viability of the forty-eight-hour hold is in question because our supreme court has granted discretionary review of the *Courtney Bishop* case.

On the record, the post-conviction court stated that it agreed that "holding someone without charging them . . . [was] an absolutely intolerable, awful procedure." Nothing in the record suggests that the post-conviction court was a proponent or advocate of the hold or that its ruling with regard to waiver was designed to preclude further review of the practice. The court preceded its ruling on waiver by asking, "How has it not been waived?" It further posited, "[I]f [petitioner] [were] the one who was being held here some 21 years ago[,] and you're alleging that's some constitutional infirmity . . . , how can 21 years later in the last phrase from his voice go[,] ['][Oh], by the way, I just thought of that[']? How has that not been waived?" We must clarify that neither the constitutionality of Memphis's forty-eight-hour hold nor the post-conviction court's ruling with regard to waiver is at issue in this

appeal.[6] The issue before us is whether petitioner suffered prejudice, as demonstrated by the post-conviction court's ruling as to waiver, by the court's denying his motion to recuse. We conclude that he did not. There is no basis in the record from which to conclude that any of the post-conviction court's rulings were made with the intent to prejudice petitioner. The post-conviction court did not abuse its discretion in denying petitioner's motion to recuse.

## CONCLUSION

Based on our review of the record, the parties' briefs, and applicable legal authorities, we discern no error and affirm the judgment of the post-conviction court.


_____
ROGER A. PAGE, JUDGE

---

[6] To be clear, while petitioner alludes to a free-standing constitutional violation with regard to the forty-eight-hour hold as well as a potential ineffective assistance of counsel argument for trial counsel's failure to challenge the practice, we note that: (1) no such claim is contained in the petition for post-conviction relief or any subsequent amendment thereto; (2) the post-conviction court did not address either claim in its order denying relief; and (3) petitioner does not, in this appeal, argue either claim. His argument focuses simply on the prejudice that ensued from the post-conviction court's denial of his motion to recuse.